**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LANCE HOLMES, <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 14-7824 (JLL) <br><br><br> **OPINION** |

**LINARES**, District Judge.

This matter comes before the Court upon the appeal of Lance Holmes ("Plaintiff") from the final decision of the Commissioner upholding the final determination by Administrative Law Judge ("ALJ") Hon. Hilton R. Miller partially denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Although ALJ Miller found Plaintiff disabled beginning November 13, 2008, in this action Plaintiff seeks a finding of disability beginning September 1, 2007. In other words, the period between the alleged onset date and the award of benefits is the issue in this case. The Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), and resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.1(f). After reviewing the submissions of both parties, for the following reasons, the final decision of the Commissioner is affirmed.

I.  **BACKGROUND**

A.  **Procedural History**

Plaintiff filed applications for DIB and SSI on November 9, 2006 alleging disability as of May 1, 2005, a date later amended to September 1, 2007. (R.[1] 316-23.) The applications were denied initially (R. 145-46, 184-89) and on Reconsideration (R. 147-48, 191-96). Plaintiff requested a hearing before an ALJ to review the application de novo. (R. 227-30.) A hearing was held on June 10, 2009 before ALJ James Andres who issued a decision on June 25, 2009 denying disability on the grounds that Plaintiff was capable of the full range of medium work. (R. 149-60.)

Appeals Council review was sought and on November 20, 2009 the Appeals Council remanded because the step two finding was inadequate, Plaintiff's cognitive impairment was not adequately addressed at steps three or four, and Plaintiff's cognitive impairment required the testimony of a vocational expert. (R. 161-64.) A hearing on remand was conducted before ALJ James Andres on May 5, 2010, after which a decision was rendered on February 23, 2011. (R. 165-78.) This second decision found plaintiff capable of unskilled medium work and denied benefits for the ability to return to past work at step four. (*Id.*)

Appeals Council review was sought and on August 30, 2013 the Appeals Council once again remanded for reconsideration of Plaintiff's cognitive impairment, noting that past work was skilled or semi-skilled and thus could not be performed by Plaintiff whom the ALJ found capable of only routine and simple tasks. (R. 179-82). A third hearing was held on December 13, 2012 and a fourth supplemental hearing was held on March 14, 2013 before ALJ Hilton Miller who issued a partially favorable decision on March 27, 2013 finding Plaintiff disabled beginning

---

[1] "R." refers to the Administrative Record, which uses continues pagination and can be found at ECF No. 5.

2

November 13, 2008, but not disabled between the amended onset date of September 1, 2007 and November 12, 2008 due to Plaintiff's ability to perform routine repetitive tasks during this timeframe. (R. 6-21.)

On October 17, 2014, the Appeals Council denied review of ALJ Miller's decision (R. 5) and Plaintiff thereafter commenced this action on December 16, 2014 (ECF No. 1). Both parties filed briefs in accordance with Local Civil Rule 9.1. (ECF No. 8, Brief in Support of Plaintiff Lance Holmes ("Pl. Br."); ECF No. 9, Defendant's Brief Pursuant to Local Civil Rule 9.1 ("Def. Br.").) The matter is now ripe for resolution.

### B.  Factual History

1. <u>Plaintiff's Background</u>

Plaintiff was 46 years old on November 13, 2008, the date he was found disabled. (R. 316.) He has past relevant work experience as a cleaner (a medium, unskilled job) and a security guard (a light, semi-skilled job). (R. 123.)

As of October 2007, Plaintiff took care of his children and grandchildren who lived with him, cooked occasionally, cleaned his room, used public transportation, went outside, socialized with others, shopped in stores, could pay bills and count change, and watched television and attended church regularly. (R. 381-85.)

During the December 2012 administrative hearing, Plaintiff testified that his brother took him by bus to the hearing, and he had not used public transportation independently for "a couple of years" and he recounted an incident where he got lost on the bus and someone had to bring him home. (R. 114-15.) At the March 2013 hearing, Plaintiff testified that he could not remember the prior hearing or the name of his representative; he had stopped reading and writing; and he lived with his brother, who took care of everything for him. (R. 121-22.)

3

2. Medical Evidence

Hospital records dated September 10, 1997 to September 15, 1997 reveal a history of head injuries.[2] (R. 431-63.) Specifically, in September 1997, Plaintiff was hospitalized for approximately six days for treatment of a concussion with a loss of consciousness following an altercation with the police. (*Id.*)

On July 13, 2007, Dr. Alexander Hoffman examined Plaintiff at the state agency's request and noted that Plaintiff was alert, oriented, lucid, and knew the year, the president, and where he was living, and that he could follow the topic of a conversation. (R. 418-22.) On August 7, 2007, state agency physician Dr. Kopel Burk reviewed the record and opined that Plaintiff retained the ability to perform the full range of medium work. (R. 423-30.) On September 18, 2007, Dr. Anthony J. Candela examined Plaintiff at the state agency's request and reported that Plaintiff "appears to be fully functional," noting that Plaintiff came to the appointment alone by bus and that he did not become confused, overwhelmed, or disoriented during examination or testing; Dr. Candela described Plaintiff's memory impairment as "mild." (R. 464-68.) Dr. Benito Tan, a state agency mental health consultant who reviewed the evidence on September 20, 2007, opined that Plaintiff retained the ability to understand and remember simple commands; maintain concentration, persistence, or pace; socially interact; and adapt to a low demand, work-like setting (R. 469-76.)

On November 13, 2008, Dr. Vinod Kapoor diagnosed Plaintiff with dementia. (R. 481-88.) On December 4, 2008, brain MRI scans ordered by Dr. Kapoor revealed moderate size right frontal, multiple small left frontal, and small right temporal regions of encephalomalacia

---

[2] The Court notes that the Medical Records Index incorrectly lists the dates of the hospital records as 2007 instead of 1997.

4

suspicious for areas of old brain contusion, along with a probable old left medial blowout fracture. (*Id.*)

The record shows that Plaintiff did not receive any significant medical treatment for the next five years, aside from diagnostic blood tests and an appointment in December 2009 where he was diagnosed with hypertension, erectile dysfunction, and degenerative joint disease. (R. 489-501.)

On January 23, 2013, psychologist Jennifer Figurelli, Ph.D., examined Plaintiff at the state agency's request and noted a significant decrease in intellectual function since the September 2007 consultative examination. (R. 502-12.) For example, Plaintiff did not know where the medical office was located and did not seem to understand why he was there. (R. 502.) He was unable to provide information about his correct birthday, height, weight, education, and work history, he did not know whether he was married or how many children he had, and he showed significant problems with fine motor coordination. (R. 503-07.) Dr. Figurelli reported that Plaintiff's intellectual functioning was in the extremely low range, he exhibited fine motor coordination and memory problems, and his adaptive behavior was within the moderately retarded range. (R. 506.)

## II.   STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be less than a preponderance." *Woody v. Sec'y of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988). It "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted). Not all evidence is considered substantial. For instance,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g. that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

*Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ must make specific findings of fact to support his ultimate conclusions. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983).

The "substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). It does not matter if this Court "acting *de novo* might have reached a different conclusion" than the Commissioner. *Monsour Med. Ctr. V. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (citing *Hunter Douglas, Inc. v. Nat'l Labor Relations Bd.*, 804 F.2d 808, 812 (3d Cir. 1986)). "The district court . . . is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)). A Court must nevertheless "review the evidence in its totality." *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984)). In doing so, the Court "must 'take into account whatever in the record fairly detracts from its weight.'" *Id.* (citing *Willibanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988)).

A court must further assess whether the ALJ, when confronted with conflicting evidence, "adequately explain[ed] in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)). If the ALJ fails to properly indicate why evidence was discredited or rejected, the Court cannot determine whether the evidence was discredited or simply ignored. *See Burnett v.*

6

*Comm'r of Soc. Sec,* 220 F.3d 112, 121 (3d Cir. 2000) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).

## III. APPLICABLE LAW

### A. The Five-Step Process for Evaluating Whether a Claimant Has a Disability

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. Pursuant to the Act, a claimant is eligible for benefits if he meets the income and resource limitations of 42 U.S.C. §§ 1382(a)(1)(A)-(B) and demonstrates that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A person is disabled only if his physical or mental impairment(s) are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether the claimant is disabled, the Commissioner performs a five-step sequential evaluation. 20 C.F.R. § 416.920. The claimant bears the burden of establishing the first two requirements. The claimant must establish that he (1) has not engaged in "substantial gainful activity" and (2) is afflicted with "a severe medically determinable physical or mental impairment." 20 C.F.R. § 416.920(a)(4)(i)-(ii). If a claimant fails to demonstrate either of these two requirements, DIBs are denied and the inquiry ends. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant successfully proves the first two requirements, the inquiry proceeds to step three which requires the claimant to demonstrate that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Part 404 Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant demonstrates that his impairment meets or equals one of the listed impairments, he

7

is presumed to be disabled and therefore, automatically entitled to DIBs. *Id.* If he cannot make the required demonstration, further examination is required.

The fourth step of the analysis asks whether the claimant's residual functional capacity ("RFC") permits him to resume his previous employment. 20 C.F.R. § 416.920(a)(4)(iv). If a claimant is able to return to his previous employment, he is not disabled within the meaning of the Act and is not entitled to DIBs. *Id.* If the claimant is unable to return to his previous employment, the analysis proceeds to step five. At this step, the burden shifts to the Commissioner to demonstrate that the claimant can perform a job that exists in the national economy based on the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 416.920(g). If the Commissioner cannot satisfy this burden, the claimant is entitled to DIBs. *Yuckert*, 482 U.S. at 146 n.5.

### B.     The Requirement of Objective Evidence

Under the Act, disability must be established by objective medical evidence. "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the [Commissioner] may require." 42 U.S.C. § 423(d)(5)(A). Notably, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." *Id.* Specifically, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

*Id.*; *see* 42 U.S.C. § 1382c(a)(3)(A). Credibility is a significant factor. When examining the record: "The adjudicator must evaluate the intensity, persistence, and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work-related activities." SSR 96-7p, 1996 WL 374186 (July 2, 1996). To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. *Id.* The requirement for a finding of credibility is found in 20 C.F.R. § 416.929(c)(4). A claimant's symptoms, then, may be discredited "unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 416.929(b); *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

The list of "acceptable medical sources to establish whether [a claimant] has a medically determinable impairment" includes licensed physicians, but does not include nurses. 20 C.F.R. § 404.1513(a). Though the ALJ "may also use evidence from other sources to show the severity of [a claimant's] impairments," this evidence is "entitled to consideration as additional evidence" and does not need to be given the same weight as evidence from acceptable medical sources. 20 C.F.R § 404.1513(d)(1); *Hatton v. Comm'r of Soc. Sec.*, 131 Fed. App'x 877, 878 (3d Cir. 2005). Factors to consider in determining how to weigh evidence from medical sources include (1) the examining relationship, (2) the treatment relationship, including the length, frequency, nature, and extent of the treatment, (3) the supportability of the opinion, (4) its consistency with the record as a whole, and (5) the specialization of the individual giving the opinion. 20 C.F.R. § 404.1527(c).

## IV. DISCUSSION

### A. ALJ Miller's Decision

On March 27, 2013, ALJ Miller issued a decision partially denying Plaintiff's applications, finding that Plaintiff was not disabled between September 1, 2007 (the alleged onset date) and

9

November 13, 2008 (the date he was found to be disabled). (R. 13-17.) In particular, and relevant to this appeal, at step two the ALJ found that on September 1, 2007, Plaintiff had borderline intellectual functioning, residual effects of head injuries, and a history of a substance abuse disorder, but beginning on November 13, 2008, he had dementia manifesting as moderate mental retardation, residuals effects of head injuries, and a history of a substance abuse disorder. (R. 13.) Prior to proceeding to step four, the ALJ concluded that, prior to his disability onset date of November 13, 2008, Plaintiff retained the RFC to perform work at all exertional levels that involved simple, routine, and repetitive tasks, specifically SVP levels of one and two; only simple decisions; and only occasional changes in routine (R. 15.) At step four, ALJ Miller found that Plaintiff retained the ability to perform his past relevant work as a cleaner prior to November 13, 2008.[3] (R. 19.)

### B. Substantial Evidence Supports the Commissioner's Decision That Plaintiff's Mental Impairment Was Not Disabling Prior to November 13, 2008

Plaintiff contends that because Plaintiff's impairments are the result of a slowly progressing organic brain disorder, the onset date of disability found by the ALJ—November 13, 2008—is dubious and unsupported by the medical evidence. (Pl. Br. at 11, 14-15.) Plaintiff argues that psychiatric testimony is required to establish the onset of disability pursuant to SSR 83-20. (*Id.* at 16-20.) Plaintiff first requests that the Court reverse the Commissioner's final administrative decision and order the payment of benefits. (*Id.* at 10.) Alternatively, Plaintiff requests that the Court remand the ALJ's decision and order a new hearing and a new decision.

---

[3] During the March 14, 2013 administrative hearing, ALJ Miller asked an impartial vocational expert (VE) to assume a person of Plaintiff's age, education and work experience, who could perform work at all exertional levels that involved simple, routine, repetitive tasks, specifically specific vocational preparation (SVP) levels of one and two; making simple decisions; and only occasional changes in routine. (R. 124.) The VE testified that Plaintiff could perform his pas relevant work as a cleaner, but that a person who was off-task ten percent of the time would be unemployable. (R. 124-28.)

10

(*Id.* at 10-11.) Defendant argues that there is substantial evidence in the record to uphold the Commissioner's final decision that Plaintiff was not disabled within the meaning of the Act from September 1, 2007 (the alleged onset date) through November 13, 2008 (the date he was found disabled). (Def. Br. at 9-17.)

The Court agrees with Defendant because substantial evidence supports the Commissioner's finding that Plaintiff was not disabled prior to November 13, 2008. SSR 83-20 provides guidance in cases involving disabilities of nontraumatic origin, such as this one, and provides in relevant part:

> Medical reports containing descriptions of examinations or treatment of the individual are basic to the determination of the onset of disability. . . . With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process. . . . In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy. However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record. . . . The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months or result in death. Convincing rationale must be given for the date selected.

SSR 83-20, 1983 WL 31249, at *2-3 (Jan. 1, 1983).

The ALJ considered the relevant medical evidence and determined that Plaintiff's medical condition became disabling on November 13, 2008, the date on which neurological examiner Dr. Vinod Kapoor diagnosed Plaintiff with dementia. (R. 13, 18, 483.) The ALJ noted that Dr. Kapoor's diagnosis of dementia was consistent with an MRI taken on December 4, 2008, which revealed multiple areas of encephalomalacia suspicious for areas of old brain contusion, and a

psychological consultative examination performed on January 23, 2013 by Jennifer Figurelli, Ph.D., who noted a significant decrease in intellectual function since the September 2007 consultative examination. (R. 13, 18.)

Furthermore, the November 13, 2008 onset is consistent with the entirety of record evidence. For example, the record shows that prior to November 13, 2008, Plaintiff cooked occasionally, cleaned his room, used public transportation, went outside, socialized with others, shopped in stores, could count change, and watched television and attended church regularly. (R. 381-85, 465.) On July 13, 2007, Dr. Alexander Hoffman noted that Plaintiff was alert, oriented, lucid, and knew the year, the president, and where he was living, and that he could follow the topic of a conversation. (R. 418-19.) On September 18, 2007, Dr. Anthony J. Candela reported that Plaintiff "appears to be fully functional," noting that Plaintiff came to the appointment alone by bus and that he did not become confused, overwhelmed, or disoriented during examination or testing; in fact, Dr. Candela described Plaintiff's memory impairment as "mild." (R. 464-66.) In addition, Dr. Benito Tan, a state agency mental health consultant who reviewed the evidence on September 20, 2007, opined that Plaintiff retained the ability to understand and remember simple commands; maintain concentration, persistence, or pace; socially interact; and adapt to a low demand, work-like setting. (R. 475.)

Plaintiff's argument that the ALJ should have consulted a medical expert is unavailing. The Third Circuit has explained that SSR 83-20 provides for the assistance of a medical advisor only where "the impairment at issue is slowly progressing and the alleged onset date is *so far in the past that obtaining adequate medical records is impossible.*" *Thelosen v. Comm'r of Soc. Sec.*, 384 F. App'x 86, 91 (3d Cir. 2010) (citing SSR 83-20 and *Walton v. Halter*, 243 F.3d 703, 709 (3d Cir. 2001)) (emphasis added); *see also Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 618

12

(3d Cir. 2009) ("*Walton*'s directive to seek out the services of a medical advisor is limited to situations where the underlying disease is progressive and difficult to diagnose, where the alleged onset date is far in the past, and where medical records are sparse or conflicting.") (citing *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 549 n.7 (3d Cir. 2003)). That is not the case here. Plaintiff requests an onset date fourteen months earlier than that determined by the ALJ (*i.e.*, the onset date is not "far in the past"). Furthermore, the ALJ had adequate medical records—two consultative examination reports, the opinion of a reviewing state agency mental health consultant, and a Function Report that were dated either shortly before or during the relevant period (R. 381-88, 418-22, 464-76)—which do not support the alleged onset date. Accordingly, under Third Circuit precedent, the ALJ was not required to obtain testimony from a medical advisor.

In sum, the ALJ's disability onset determination was sufficiently explained in the decision, had a legitimate medical basis, and is supported by substantial evidence in the record.

## V. CONCLUSION

For the foregoing reasons, the decisions of the Commissioner and the ALJ are affirmed. An appropriate order follows this Opinion.

DATED: 9/14/15.

JOSE L. LINARES
U.S. DISTRICT JUDGE

13